The DREAMERS, LLC; Willie M. Neal, Jr.; and Glenda Hoffman, Appellants,

v.

DON'S LUMBER & HARDWARE, INC., Appellee.

No. 2010–SC–000227–DG.

Supreme Court of Kentucky.

Sept. 22, 2011.

Rehearing Denied Dec. 22, 2011.

Robert C. Bishop, Elizabethtown, KY, Counsel for Appellants.

Jerry M. Coleman, Ryan Foster Quick, Quick & Coleman, PLLC, Elizabethtown, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

This case is before the Court on an order entered by the Court of Appeals on March 3, 2010, dismissing the Appellants' appeal as moot due to satisfaction of the judgment which is the subject of the appeal. This Court accepted jurisdiction to consider whether this violated Appellants' constitutional right of appeal and whether a party must specifically reserve a right to appeal when paying a judgment in full in lieu of the supersedeas bond allowed by CR 73.04 if the appeal is to continue. The parties did not specifically frame the issues in this manner, but it is clear from the record that these are the questions presented. Because this Court concludes that paying a judgment in full, absent clear evidence of a settlement and compromise, does not extinguish a right to appeal, the judgment below is reversed and this matter is remanded to the Court of Appeals to hear the merits of the appeal.

## I.  Background

A somewhat convoluted set of facts occurred here, and not all are necessary to resolution of this case, but a recitation of the process to reach this point will put the issues before the Court in context.

Appellant, The Dreamers, LLC is in the business of building and selling homes. In particular, Dreamers contracted to build a house for Glenda Hoffman. The materials to construct the home were purchased at Don's Lumber & Hardware, Inc. by the Vice–President of Dreamers, Willie Neal, who is also an Appellant. Don's Lumber claimed that Willie Neal also signed for the debt in a personal capacity, but that claim is disputed. Dreamers finished con-

struction of the house and sold it to Glenda Hoffman, but allegedly failed to pay Don's Lumber for the materials it supplied.

Don's Lumber then filed a materialman's lien (styled as mechanic's lien) on the property Glenda Hoffman had purchased. It then filed suit against Dreamers and Willie Neal for judgment on the debt. Don's Lumber also filed a foreclosure action against Glenda Hoffman. The trial court, by way of a special judge, set the summary judgment motion for hearing in another county, and Dreamers' attorney failed to attend due to a scheduling conflict. Summary judgment was granted to Don's Lumber, and the property was ordered sold.

Dreamers' attorney then filed a CR 59.05 motion, claiming excusable neglect and that he had notified the clerk that he had a scheduling conflict and could not appear on the date of the summary judgment hearing. He asked the trial court to set aside the summary judgment and to stop the sale for several stated reasons. The trial court denied the motion, and the Master Commissioner set a date for the sale. Dreamers then filed a motion with the trial court claiming that the time for filing a notice of appeal had not run and. that the sale could not go forward. The trial court disagreed and suggested the notice of appeal should be filed before time ran, and a supersedeas bond should be posted to stop the sale.

Dreamers filed the notice of appeal, but for whatever reason, it apparently could not post the supersedeas bond at that time. Instead, it filed a motion for a writ at the Court of Appeals and also asked for temporary emergency relief stopping the sale, which the Court of Appeals granted. Later, the Court of Appeals denied the writ, thus negating the temporary relief previously granted, and the sale was reset. Shortly thereafter, Dreamers filed a sec-

ond writ action, which the Court of Appeals eventually dismissed as moot.

On the day of the sale, November 19, 2009, Dreamers paid the full judgment amount of $48,309.95 to Don's Lumber to stop the sale. In a written receipt, the agent for Don's Lumber stated: "I, Jerry Coleman, hereby acknowledge receipt on behalf of Don's Lumber for $48,309.95 from Willie M. Neal in case number 2009–CA–2136–OA which is being made to stop a pending sale on property located at 200 Mary Lee Street, Elizabethtown, Kentucky, 42701." The case number in the statement referred to the second writ action that had also been filed in the Court of Appeals, not the direct appeal.

In the direct appeal, all steps had been taken, including briefing, necessary for the case to be in a posture to be heard or submitted on the briefs and record to the appropriate Court of Appeals panel. However, the Court of Appeals did not receive the trial court record until December 15, 2009. On December 9, 2009, Don's Lumber filed a motion to dismiss the appeal as moot because the judgment had been paid. On December 21, 2009, the Appellants responded that there had not been an agreement to dismiss the appeal, and that they had specifically not included such language even though Don's Lumber wanted the appeal dismissed.

On March 3, 2010, the Court of Appeals entered a one-paragraph order stating that the Appellants had satisfied the judgment and dismissed the appeal making no specific findings on the arguments that had been raised by Appellants. This Court granted discretionary review.

## II. Analysis

■ Dreamers raises two issues, one based on the Kentucky Constitution and one based on the law of supersedeas

bonds. Because a court should not resolve a question on constitutional grounds if other legal grounds will address the problem, *Louisville/Jefferson County Metro Gov't v. TDC Grp., LLC,* 283 S.W.3d 657, 660 (Ky. 2009), this Court will not address the constitutional question as the question about relinquishment of an appeal after paying a judgment in full can be resolved on other legal grounds.

■ It has long been the law in Kentucky that "a party ... does not need to post a supersedeas bond to take an appeal from a judgment," though "[t]he failure to post a bond ... leaves the party who obtained the judgment free to execute on it." *Elk Horn Coal Corp. v. Cheyenne Resources, Inc.,* 163 S.W.3d 408, 419–20 (Ky.2005). In this case, neither a supersedeas bond was posted, nor was the judgment executed upon. Instead, Dreamers voluntarily paid the judgment to avoid the chosen means of executing the judgment, namely, sale of the property by the Master Commissioner. But "it is clear where a litigant pays an adverse judgment he does not thereby impair his right to appeal." *Moss v. Smith,* 361 S.W.2d 511, 514 (Ky. 1962).

■ Payment of a judgment, however, can extinguish a right of appeal where the payment is part of a settlement or compromise. *See Stairs v. Riley,* 306 Ky. 645, 208 S.W.2d 961 (1948). The basic question before the Court, then, is whether Dreamers' payment of the judgment in full in this case was part of a settlement or compromise and therefore waived its right to appeal. Both parties cite *Stairs v. Riley* as precedent for their position. However, Don's Lumber misreads *Stairs.*

In *Stairs,* our highest court, then sitting as the Court of Appeals, reiterated longstanding law that the mere payment of a money judgment does not affect the losing party's right of appeal. It then distin-

guished the case before it on its facts. The appellee in the case had obtained a personal judgment for $3400 and obtained an order of sale on a piece of mortgaged property. *Id.* at 962. The property owner appealed, and shortly thereafter the appellee moved to dismiss the appeal, claiming that the judgment had been compromised and settled. *Id.* She claimed that on the date of the sale she "accepted in full satisfaction thereof" payment from the landowner in the amount of $2500, plus court costs, which had been paid to her. *Id.* Also, the judgment had then been transferred or assigned to an agent for the appellants. *Id.* Tellingly, the case had been stricken from the trial court docket on motion, so that no case remained below. *Id.*

The Court discussed that "parties may, however, for valuable consideration, at any time *settle* their differences." *Id.* at 963 (emphasis added). And the Court found that the parties in *Stairs* had made an "effective compromise which terminated appellant's right of appeal." *Id.* But the Court clearly emphasized that the law holds that there must be more than the mere payment of the judgment amount to adversely affect a losing party's right of appeal. *Id.* at 962.

For nearly 100 years, our highest court has recognized that

> a party against whom a judgment has been rendered for money may pay it and still prosecute an appeal. In such a case, he has not altered the attitude of anyone by the act of payment except himself, and the payment of the judgment has been construed to be in lieu of his right to supersede the judgment. . . .

*Madden v. Madden,* 169 Ky. 367, 183 S.W. 931, 933 (1916) (dismissing appeal on other grounds). This describes a situation very similar to the present case's facts. Since

Dreamers can rightfully choose to pay the judgment in lieu of superseding by bond, it has no obligation to "reserve" the right to appeal. Rather, the obligation must be on the party seeking an end to the appeal to secure evidence that such was the intent of the parties. Otherwise, there is *no* proof of settlement, or satisfaction and accord.

In addition, for over 60 years our highest court has held "the right of appeal is favored by the law, and it certainly should not, and will not, be held to have been waived except upon clear and decisive grounds." *Mercer v. Federal Land Bank of Louisville*, 300 Ky. 311, 188 S.W.2d 489, 491 (1945); *see also Hundley v. Hundley*, 291 S.W.2d 544, 546 (Ky.1956) ("The right of appeal is favored by law and will not be held to have been waived except on clear and decisive grounds.").

The Court did nothing in *Stairs* to change this law. It simply held that when the facts supported a clear settlement, or satisfaction and accord, that there was then no longer any case for the judgment of an appellate court to affect as both parties had ended the inquiry. *Stairs*, 208 S.W.2d at 963. The Court in *Stairs* pointed out that the appellee had accepted *less* than the face amount of the judgment to her detriment; the sale was cancelled because of the appellant's offer to settle; the judgment was essentially extinguished by assigning it to the appellant through his agent; and the appellant's position in regard to the actual amount of the judgment was improved by the appellee accepting a lesser payment from him than the amount to which she was entitled. *Id.* at 962–63. The Court found that there was clear and decisive evidence to indicate an intent by the appellant to waive his right to appeal under those facts.

That is not the situation here. Several facts are disputed, not the least of which is whether there was any intent to waive Dreamers' right to appeal. Though the result in *Stairs* is what Don's Lumber clearly wishes for, it does not have clear and decisive facts to support it.

First, Dreamers never conceded that summary judgment was proper in this case before the money was paid to Don's Lumber on the day of the sale. Its counsel filed a CR 59.05 motion with the trial court seeking to have the judgment set aside because he had been unable to attend and defend the motion for summary. He further objected to the motion being heard in the wrong venue. He told the trial court that there were questions of fact that would prevent summary judgment, such as whether the lien had been properly perfected and the appropriate parties served according to statutory requirements. When none of this availed, he asked the trial court not to schedule the sale until the appeal he had filed was completed. At that point, apparently unable or unwilling to post the supersedeas bond, he filed a writ action and obtained emergency relief stopping the first sale. When the writ was denied and a new sale date set, Dreamers was left with the option of posting the bond or paying the judgment in order to prevent execution of the judgment by the sale of a property it had sold to an innocent third party. Dreamers paid the judgment, it claims, in lieu of its right to supersede with a bond, which the holding in *Madden* supports.

Further, the only evidence in addition to the payment offered by Don's Lumber is an equivocal statement of receipt signed by its agent, Jerry Coleman, which merely acknowledges that payment was made in a certain amount to stop the sale of the property. No mention was made of costs, which are also allowable under the statute, and indeed the record reflects that Don's Lumber went back to the trial court and obtained an order for an additional amount

for the costs of the action *after* taking the money from Dreamers. There is no specific mention in the receipt of settlement of any claim except for an oblique reference to the writ action number in the Court of Appeals. And, if that were adequate alone, arguably *only* the writ action was contemplated by either party at the time the money was paid. There is not even a statement in the receipt that the amount paid was the amount of the judgment.

The facts of this case are far from establishing a waiver of any kind, let alone one that is "clear and decisive." *Mercer*, 188 S.W.2d at 491. Given the issues raised at the Court of Appeals in the direct appeal, it is instead rather clear that Dreamers had much to argue, and is entitled to pursue its appeal. Certainly, should the trial court's judgment be reversed, Dreamers could ask the trial court for a new judgment restoring any amount of money it may have overpaid, *cf. Elk Horn Coal Corp.*, 163 S.W.3d at 420 ("[I]f the judgment is reversed, any benefits obtained by virtue of the execution must be restored to the adverse party."), and could then pursue that judgment against Don's Lumber. This case is clearly not over to the point where Dreamers would be unable to obtain a remedy for the money it paid to Don's Lumber to stop the sale.

### III. Conclusion

Consequently, the Court of Appeals' decision to dismiss Dreamers' appeal is reversed, and this case is remanded to the Court of Appeals to proceed with the direct appeal that had previously been perfected.

All sitting. All concur.