STRONG HARDWARE COMPANY *v.* CHARLES GONYOW ET UX.

May Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON. and GRAHAM, JJ.

Opinion filed October 3, 1933.

*H. A. Bailey* for the plaintiff.

*J. H. Macomber* and *J. H. Macomber, Jr.*, for the defendants.

SLACK, J. This is a suit to foreclose two real estate mortgages. One of them was executed and delivered by the defendants to the Champlain Trust Company, July 13, 1923, and is now owned by the plaintiff. No question is made in this Court regarding plaintiff's rights under that mortgage. The chancellor found the following facts respecting other material transactions of the parties.

On the day that defendants executed and delivered the above mortgage they executed and delivered to Edgar L. Fairbanks and Mary A. Fairbanks a second mortgage on the same premises, which is conditioned as follows:

"The conditions of this deed are such that if the said Charles Gonyow and Anna Gonyow shall well and truly pay or cause to be paid, unto the

said Edgar L. Fairbanks and Mary A. Fairbanks, their heirs or assigns, one certain promissory note, in writing, bearing date of July 13, 1923, for the sum of $800.00, signed by the said Charles and Anna Gonyow and payable to the order of said mortgagees, $15.00 per month, with interest annually, at 5 per cent per annum, according to the tenor thereof; *and shall pay any and all other indebtedness of the said Charles Gonyow and Anna Gonyow to the said mortgagees, their heirs and assigns, heretofore or hereafter contracted, and represented by promissory notes or otherwise"*; (the italics are ours).

This mortgage and the note therein described were transferred to plaintiff October 22, 1928.

December 5, 1927, the defendants gave L. D. Mills & Son a note for $600 payable six months after date. This note was indorsed to the plaintiff June 28, 1928.

On March 31, 1931, the defendants owed the Commercial Credit Corporation a note for $5,200, which represented the purchase price of three trucks, and was secured by a mortgage on such trucks. This note, or part of it, was then due, and the payee offered to accept $4,900 in full payment thereof. The defendants arranged with plaintiff to furnish that amount, which it did, and the note and mortgage were transferred to plaintiff, and the plaintiff delivered them to defendants. On the same day defendants sold two of said trucks to one Holcomb and received in payment $500 in cash, seven notes for $575 each, and one note for $675. They indorsed these notes, waiving demand, notice, and protest, and delivered them together with the $500 to the plaintiff. The payment of the Credit Corporation note, the sale of the trucks to Holcomb, the receipt of the $500 and the Holcomb notes by defendants and the delivery of said money and notes by them to the plaintiff were contemporaneous transactions.

At the same time defendants gave plaintiff a note for $500, payable five months after date. This note was to pay the plaintiff, in part, for furnishing the money to take up the Credit Corporation note.

418

The main questions for review are whether the Mills & Son note, the Holcomb notes that fell due October 1, 1931, November 1, 1931, December 1, 1931, and February 1, 1932, and the note which defendants gave plaintiff March 31, 1931, all of which plaintiff now holds, are covered by the Fairbanks mortgage, and whether the last mentioned note is usurious. The chancellor found in favor of the defendants on both questions, and entered a decree accordingly. The case is here on plaintiff's exceptions and appeal.

The parties treat these notes as standing alike under this mortgage, but they do not. The first one was given by the mortgagors to a third party who never had any interest in this mortgage, and very likely never heard of it, and that party transferred such note to the plaintiff some months before the latter acquired this mortgage; while the other five notes represent direct obligations of the mortgagors to the plaintiff which arose nearly two and one-half years *after* it acquired such mortgage.

The only case in this State that appears to give support to the claim that the Mills & Son note is covered by this mortgage is *Lamoille County Savings Bank & Tr. Co.* v. *Belden*, 90 Vt. 535, 98 Atl. 1002, 1003. In that case, a mortgage given by a husband and wife to the plaintiff contained the following accruing clause: ''and shall pay said bank all further sums we or either of us now owe it or may become owing it in any way,'' etc., and it was held that the language ''owing it in any way'' covered a note given by the husband to a third party and indorsed by the latter to the plaintiff. It should be noted, however, that in giving effect to the language last quoted the Court took into consideration the ''character of the mortgagee,'' namely, that it was a ''bank of discount and deposit,'' and also the fact that the note was ''discounted by the bank in its usual course of business.'' That decision, limited in its scope as it is, is not authority for holding that this note is covered by this mortgage. Nor is it longer authority, in this State, as to the rights of parties under accruing mortgages given to banks. See G. L. 5363, subd. 1, (c).

Only two other cases are cited by counsel for plaintiff in support of his claim regarding these notes, although he says that he has ''carefully combed the digests for supporting

authorities." These are *Collins* v. *Gregg*, 109 Iowa, 506, 80 N. W. 562, and *Price* v. *Williams*, 179 Ark. 12, 13 S. W. (2d) 822. The former simply holds that the accruing clause in the trust deed in question covered future advances made by the *grantee* to the grantor, and the latter holds that the accruing clause there in question covered future advances made by the *assignee* of the mortgage to the mortgagor. This case does not support plaintiff's claim regarding the Mills & Son note, but does tend to support its claim as to the others. In *First Nat. Bank of Paterson* v. *Byard*, 26 N. J. Eq. 255, where the facts were similar to those in *Lamoille County Savings Bank & Tr. Co.* v. *Belden, supra,* a like conclusion was reached.

Among the cases that tend to support the view that this note is not covered by this mortgage are *Lashbrooks* v. *Hatheway*, 52 Mich. 124, 17 N. W. 723, 724; *First Nat. Bank of Jackson* v. *Combs*, 208 Ky. 763, 271 S. W. 1077; *Benton* v. *Kent*, 61 N. H. 124; *Moran* v. *Gardemeyer*, 82 Cal. 96, 23 Pac. 6, and *Walker* v. *Whitmore*, 165 Ark. 276, 262 S. W. 678. See, also, 41 C. J., page 468, par. 373. In *Lashbrooks* v. *Hatheway*, the late Judge Cooley, in discussing whether a mortgage which provided that the mortgagor should pay "all such further or other sum or sums of money, and other indebtedness" as might be due and owing from him to the mortgagee covered a note given by the mortgagor to a third person and later indorsed to the mortgagee said: "We have seen that by its terms it purports to secure any claim the mortgagee might have against the mortgagors either before or at the time of foreclosure; and it seems to be thought that the mortgagee might buy up demands at discretion, and thereby extend the mortgage indefinitely. But this would be so extraordinary an arrangement that the intent to provide for it ought to be too clear for doubt before a court would be justified in enforcing it. We do not think it is to be found in this mortgage. The farthest this stipulation can be understood to go is to cover demands directly arising out of the dealings between the mortgagors and the mortgagee, and its terms will be fully answered if they are limited to such demands." Since this is an open question with us, we adopt the law of the latter cases so far as this note is concerned.

The other notes, as we have seen, represent direct indebtedness of the defendants to plaintiff which was incurred

long after the plaintiff became the owner of this mortgage. We think that such indebtedness stands the same under the mortgage as would an indebtedness contracted by the mortgagors with the mortgagees before the assignment of the mortgage. It cannot be doubted but that the mortgage was intended to cover any and all subsequent direct inbebtedness of the mortgagors to the mortgagees, and we think that it is equally clear that it was intended to cover any and all like indebtedness of the mortgagors to the assignee, in case there was one.

A different meaning might be given the provision under consideration by rearranging its language and supplying certain words in accordance with the suggestions of defendants' counsel, but when, as here, the language *as used* appears to express the intended scope of the agreement, it must stand as the parties left it. It is our province to construe contracts; not to make them. For the reasons stated, we think, and hold, that these notes are covered by this mortgage. As supporting this conclusion see *Price* v. *Williams, supra,* and *In re Great Lakes Lumber Co.* (D. C.), 8 Fed. (2nd) 96.

It is found, however, that the note for $500 which defendants gave plaintiff March 31, 1931, is usurious. If it is, it has no standing under this mortgage.

The plaintiff excepted to this finding on the grounds: (1) That usury is not to be presumed; (2) that the consideration for this note was the purchasing of the note and mortgage of the Credit Corporation; (3) that this note was a method of discounting the Holcomb notes; and (4) that, when plaintiff purchased the Credit Corporation note and mortgage, it became the owner of them, and this note was the inducement for it to exchange them for the Holcomb notes. Generally speaking, usury will not be presumed, since it depends upon the wrongful intent of the lender, at least, to contract for something which the law forbids; but, when the contract upon its face imports usury, there is no room for presumption, for the wrongful intent is apparent. *Farmers' Bank* v. *Burchard,* 33 Vt. 346, 370; *Ricker* v. *Clark,* 54 Vt. 289, 298. This note, standing alone, bears no indication that it is usurious. But when we consider its rôle in the entire transaction of which it was a part, as we must, it does not appear to be so innocent. That transaction, in effect, was this: The plaintiff loaned defendants $4,900 with

which to pay the Credit Corporation note, and for so doing got $5,200 in cash and notes, which were perfectly good and were so considered by the parties at the time, so far as appears, besides the note in question. In other words, the plaintiff received the equivalent of $5,700 for a loan of $4,900. We think that this transaction as a whole, standing alone, justified the chancellor's conclusion that this note is usurious. Furthermore, the findings are predicated upon the pleadings and "concessions made," and there is nothing before us to show what the concessions were.

The plaintiff excepted to the decree because it did not include the notes in question. The first and last of these were properly omitted from the decree; the others should have been included.

*Decree reversed, and cause remanded, with directions that the sum due under these mortgages be ascertained on the basis indicated, and that a new time of redemption be fixed. Let the plaintiff recover costs.*